

**Kaufman Dolowich & Voluck, LLP**
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

**Keith J. Gutstein, Esq.**
Email: KGutstein@kdvlaw.com

February 14, 2022

**VIA ECF**
Magistrate Judge Debra C. Freeman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: **Antonio Morales et al. v. 740 Roast Corp. d/b/a Roast Kitchen et. al.**
      **Index No.: 20-cv-03740 (ALC)**

Dear Judge Freeman:

  This office represents 740 Roast Corp., Peter Xenopoulos and Alexander Xenopoulos (collectively, the "Defendants") in the above-referenced matter. In accordance with the holding in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015), this letter motion is submitted jointly with Plaintiff, Antonio Morales, to respectfully request that Your Honor approve the within fully-executed Settlement Agreement and Release (the "Agreement") between the Parties, annexed hereto as Exhibit A[1], and retain jurisdiction over the enforcement of the Agreement.

  The Agreement represents a good faith effort between experienced labor and employment counsel to negotiate an action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement which provides Plaintiff with a satisfactory recovery of his damages under applicable law.

**I.**  **Plaintiff's Allegations and Defendants' Responses**

  On May 14, 2020, Plaintiff, represented by counsel herein, commenced a wage and hour lawsuit against 740 Roast Corp., Alexander Xenopoulos, Peter Xenopoulos, William Palomo, Edel Lucero, and Ela Doe (the "Complaint"). On October 30, 2020, Plaintiff voluntarily dismissed the action, without prejudice, against William Palomo, Edel Lucero and Ela Doe. *See* Dkt. #34. The wage and hour lawsuit alleges violations of the FLSA and NYLL. Specifically, Plaintiff alleges that Defendants employed him as a non-exempt cook, for which he worked in excess of 40 hours per week without overtime compensation. Specifically, Plaintiff alleges that from January 2015 through June 2018, he worked approximately 5am to 3pm, Mondays through Fridays, and he also worked 5am to 2pm on Saturdays. Plaintiff alleges that he worked approximately 58-59 hours per week. Plaintiff alleges that he was earning a fixed salary of $1,000 per week or $1,100 per week,

---

[1] The Parties agreed to forego the requirement for Peter Xenopoulos to sign the Agreement in the presence of a notary because he was out of the county and would not be returning before the deadline for this submission.

*Magistrate Judge Debra C. Freeman*
*February 14, 2022*
*Page 2*

depending on the time frame. Plaintiff further alleges that Defendants deducted 40 minutes from his pay for meal periods but was never able to take an uninterrupted break. Plaintiff also alleges that he signed a document regarding his pay, but was not permitted to review it in detail.

Defendants dispute the allegations asserted by Plaintiff. To begin, it is Defendants' position that Plaintiff is not entitled to any overtime wages because he was at all relevant times properly classified as an exempt executive employee. Under the U.S. Department of Labor regulations, at the time of Plaintiff's employment, he met the executive exemption because: (1) he was compensated on a salary basis of at least $455 per week during the relevant period; (2) his primary duty was management of the Corporate Defendants' kitchen; (3) he customarily and regularly directed the work of two or more employees; and (4) he had the authority to hire or fire other employees and his suggestions and recommendations regarding kitchen staff matters were given particular weight. Furthermore, Plaintiff also meets the applicable exemption standard set under the NYLL and its regulations.

Additionally, Defendants' records demonstrate that Plaintiff worked a limited amount of overtime, if at all. Moreover, because the parties had a clear and mutual understanding that Plaintiff's salary covered all hours worked in the week, in the event that Plaintiff worked in excess of forty hours per week, and was entitled to overtime, his damages are limited to one-half of his regular hourly rate, not time-and-a-half his regular rate of pay.

Plaintiff disputes that he was a manager and had the authority to hire and fire anyone. It is also Plaintiff's position that he worked significant overtime, and that the payment of a fixed weekly salary in this context is a patent violation of the NYLL for which there is no exception.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.     Settlement Negotiations

On July 29, 2021, Plaintiff provided Defendants with a damages calculation, which totaled approximately $260,000 and included, but was not limited to, unpaid wages and liquidated damages. Plaintiff conveyed an initial settlement demand of $290,000. Plaintiff's damage calculations *and* initial demand were wholly based on Plaintiff's maximum possible recovery if he were able to establish each and every claim and did not account for any of the aforementioned arguments comprising Defendants' position. The initial demand was also calculated assuming that Plaintiff was owed time and one-half his regular rate of pay for all overtime hours worked in a week, which he alleges was approximately 20 hours of overtime per week for approximately 178 weeks.

Each party served demands for documents and interrogatories in connection with this case, and documents and information were exchanged. Once there was a preliminary exchange of documents in connection with this case, the Parties made significant strides on settlement discussions. Moreover, it was during this time that Defendants experienced yet another devastating

*Magistrate Judge Debra C. Freeman*
*February 14, 2022*
*Page 3*

downfall in their business as a result of the new COVID-19 variant, Omicron. It is well known that in March 2020, the COVID-19 pandemic hit New York, and businesses were mandated to be closed under the former Governor's Executive Order. This completely decimated Defendants as theirs is a hospitality business, and one that specifically caters to tourists and individuals working in New York City. They were forced to close. In fact, Defendants' businesses have closed permanently and the few that remain operating today are engaging in a mere fraction of the business than they did the year before due to decreased foot traffic resulting from people leaving New York City and/or choosing to work remotely. Defendants were hopeful a few months ago that their business would turn around again when the pandemic seemed like it was ending. However, with the emerging Omicron variant, businesses are forcing employees to work remotely again. Thus, foot traffic in midtown New York City is limited and the business potential for Defendants is nearly nonexistent.

With each party recognizing the risks associated with litigation during and after an uncertain time for all businesses, and especially the hospitality industry in New York City, the Parties came to an agreement to settle the case. Specifically, following extensive negotiations, the Parties reached a settlement in the amount of $35,000, inclusive of attorneys' fees and costs, the total amount which will be paid out as follows: $20,000 within 30 days of judicial approval and the remainder to be paid over a period of five (5) months.

### III.     The Settlement is Fair and Reasonable

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's-length bargaining between experienced labor and employment counsel which was

*Magistrate Judge Debra C. Freeman*
*February 14, 2022*
*Page 4*

completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in moving forward in this litigation. Plaintiff's claim that he was improperly classified as exempt was to be contested. In the event that a trier of fact determined that Plaintiff was actually non-exempt, Plaintiff's claim of working approximately 60 hours per week, six (6) days per week, would also be vigorously contested. Finally, Plaintiff faced the prospect of waiting many months, if not years, for the matter to proceed through trial. Moreover, there remains a very real risk to Plaintiff that Defendants may no longer be viable even if he was successful at the end of the litigation. At this stage of the proceedings, Plaintiff is obtaining a recovery without having to go through the time-consuming and risky process of litigating his claims.

Conversely, while Defendants were confident that they would be able to challenge Plaintiff's claims, they were also mindful of the risk that Plaintiff may have prevailed on some claims, and that even if Defendants were successful, it would have only occurred after a protracted litigation and at a significant cost—a cost they simply cannot bear given the ongoing pandemic that continues to decimate their business. The costs of litigation and prospects of liability for Defendants clearly weighed in favor of early resolution. Accordingly, both Parties faced substantial risks in proceeding forward with the litigation, which weighs in favor of approval of the Agreement.

*The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

It cannot be disputed that the Agreement was the product of legitimate bargaining between experienced labor and employment counsel which was devoid of any resemblance of fraud or collusion. Plaintiff's counsel zealously advocated on behalf of his client throughout, from discovery through negotiating the amount of the settlement, to memorializing the terms of same. Similarly, Defendants' counsel worked to ensure that Defendants reached a settlement where Plaintiff was not receiving any more than he may be entitled to in the event he was successful at trial, while taking into account the expensive cost of a lengthy trial. The Agreement constitutes an effort by experienced labor and employment counsel for both Parties to resolve the dispute under the best possible circumstances for their respective client. Accordingly, the Agreement should be approved by the Court.

**IV.    Plaintiff's Application for Attorney's Fees Should Be Approved**

Under the settlement, Plaintiff's counsel will receive $12,479.56 from the settlement fund for attorneys' fees and costs. This represents one third of the recovery in this litigation ($11,666) plus costs ($812.90).

Plaintiff's counsel's lodestar in this case is $9,137.50 and Plaintiff's costs are $812.90. A copy of Plaintiff's billing record is attached as "Exhibit B." The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically

awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-cv-00105 (RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding a third-, or 5.23-times lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result.") (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-cv-08706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016)); *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-07961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15-cv-01324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Additionally, everyone covered by this settlement has already agreed to the fee provided for in the Agreement.

Given Plaintiff's counsel's significant experience in representing plaintiffs in wage and hour matters, Plaintiff's counsel was able to obtain an excellent result due to the Parties' cooperative exchange of information and on-going negotiations. A brief biography of each attorney who performed billable work in this matter is as follows[2]:

    i.    Michael Faillace, Esq. ("MF"), was the Managing Member of Michael Faillace & Associates, P.C., which is now CSM Legal, P.C. and was in practice from 1983 to November 5, 2021[3]. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment anti-discrimination law as an Adjunct Professor at Fordham University School of Law beginning in 1992 and at Seton Hall University Law School from 1995 to 1998. He is a nationally-renowned speaker and writer on employment law. He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work was billed at the rate of $450.00 per hour, his standard billing rate for matters paid on an hourly basis. Courts have routinely held that hourly fees of $450.00, or even $500.00, for counsel with Mr. Faillace's level of experience (37 years) and expertise are reasonable. *See, e.g.*, *Manley v. Midan Rest. Inc.*, No. 14-cv-01369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500.00 per hour for FLSA litigator with 34 years of experience).

    ii.    Jesse Barton is a Senior Associate at CSM Legal, P.C., formerly Michael Faillace & Associates, P.C. He graduated from Fordham Law School in

---

[2] Paralegal work is denoted by "PL" is billed at the rate of $125 an hour.

[3] As Mr. Faillace is currently suspended from this Court, no funds will be distributed to him unless an application is made to the Court on his behalf and an order is entered to that effect.

*Magistrate Judge Debra C. Freeman*
*February 14, 2022*
*Page 6*

      2012 and was admitted to the bar in 2013. Following law school, he practiced as an associate with the law firm of Virginia & Ambinder, LLP, cultivating a background in labor and employment law. He joined the firm of Michael Faillace & Associates, P.C in 2015, and has been recognized as a "Rising Star" by the Super Lawyers organization for 2016-2021. He is an experienced litigator and has prosecuted several trials in this Court. His work is billed at the rate of $350 an hour. This is a reasonable rate for someone with his experience level. "Courts in this district have determined that fees ranging from $250 to $450 is appropriate for experienced litigators in wage and hour cases." *Silva v Legend Upper W. Llc*, 2022 US Dist LEXIS 3714 AT *7 [SDNY Jan. 7, 2022, No. 16-CV-3552 (PGG) (KHP)]); *Lopez v. Emerald Staffing, Inc.,* No. 18 CIV. 2788 (SLC), 2020 U.S. Dist. LEXIS 33232, 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour")

## V.    Conclusion

      For all of the reasons set forth above, the Parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

                                            Respectfully submitted,
                                            Kaufman Dolowich & Voluck, LLP

                                            Keith Gutstein

cc:    All counsel (*via* ECF)

4876-5974-8622, v. 1